## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHANDRAKANT SHITOOT and<br>MANJUSHA SHITOOT, Individually in Their<br>Own Right and as Co-Administrators of the<br>ESTATE of DINSHAW SHITOOT, Deceased<br><br>Plaintiffs,<br><br>v.<br><br>JAMES D. LARSON, M.D.. and<br>ST. FRANCIS HOSPITAL, INC.<br><br>Defendants. | No.<br><br>TRIAL BY JURY DEMANDED |

### CIVIL ACTION COMPLAINT

### PARTIES

1.  Plaintiffs Chandrakant Shitoot and Manjusha Shitoot ("plaintiffs") are husband and wife, and the parents of Dinshaw Shitoot, deceased, and are citizens and residents of the country of India, residing therein at Opp. Dr. B.C. Gupta House Near Sapre School, Budhapara Raipur Chhattisgarh, India Pin Code 492001; they were duly appointed as Co-Administrators of the Estate of Dinshaw Shitoot, deceased, by the Register of Wills for New Castle County, Delaware, on September 26, 2014.

2.  Decedent Dinshaw Shitoot ("Decedent" or "Mr. Shitoot") was a citizen and resident of the country of India, residing therein at Opp. Dr. B.C. Gupta House Near Sapre School, Budhapara Raipur Chhattisgarh, India Pin Code 492001; decedent was born on May 11, 1980 and died on October 20, 2012, at the age of 32; at the time of his death, decedent was visiting the United States on a B-1 Visa on business for his employer.

3.  Defendant James D. Larson, M.D. ("defendant Larson") is a physician, board-certified in surgery and licensed to practice medicine in the State of Delaware; at all times relevant hereto, defendant Larson practiced and was specializing in surgery and maintained a business practice located at 803 West 10th Street, Wilmington, Delaware 19801; at all times relevant hereto, Defendant Larson was acting as an agent, servant or employee of the other named defendants; defendant Larson currently is a citizen and resident of Wisconsin, and has a practice located at 975 Port Washington Road, Grafton, Wisconsin 53204; upon information and belief, at all times relevant to this matter, defendant Larson was a physician duly licensed under the laws of the State of Delaware and a healthcare provider as that term is defined in 10 Del.C. §6801.

4.  Defendant St. Francis Hospital, Inc. ("defendant St. Francis") is a Delaware Corporation that may be served upon its registered agent The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801; defendant St. Francis, at all times relevant hereto, owned and/or operated a hospital and/or health care facility and regularly conducted business at 701 North Clayton Street, Wilmington, Delaware 19805; at all times relevant hereto, the agents, servants and/or employees of defendant St. Francis, including hospital physicians, nurses, staff, and/or defendant Larson, was/were acting in the course and scope of their agency, servitude and/or employment for the benefit of defendant St. Francis; upon information and belief, at all times relevant to this matter, defendant St. Francis was a healthcare provider as that term is defined in 10 Del.C. §6801.

2

## JURISDICTION AND VENUE

5. Jurisdiction in this Court is invoked pursuant to 28 U.S.C. §1332(a)(2), as there exists complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391, as all defendants regularly transacted business in this district, and a substantial part of the events giving rise to this claim occurred within this district.

## FACTUAL BACKGROUND

7. At all times relevant hereto, Defendants Larson and/or St. Francis engaged as its agents, servants, and employees, various healthcare providers including physicians, interns, physician assistants, nurses, fellows, and others, known only to Defendants at this time, including the individually-named physician defendant Larson, who provided medical care and treatment to Mr. Shitoot. Accordingly, Defendants Larson and/or St. Francis is/are liable for the negligent acts and omissions of these aforementioned physicians, physician assistants, residents, interns, nurses, fellows, and others in the care of Mr. Shitoot, including the individual defendant named herein, under theories of respondeat superior, master-servant, agency, and right of control.

8. At all times relevant hereto, all defendants acted by and through their actual, apparent and/or ostensible agents, servants, and/or employees and some or all of these defendants may have been agents, servants, and/or employees of other individuals or entities.

9. At all times relevant hereto, Defendants Larson and/or St. Francis were acting by and through their agents, servants, and employees, including the aforementioned named defendants, defendant Larson, and hospital nurses and other staff presently known to

3

Defendants Larson and/or St. Francis, but unknown to plaintiffs after reasonable investigation, while providing medical care and treatment to Mr. Shitoot.

10. At all times relevant hereto, Defendant St. Francis owed non-delegable legal duties directly to the Decedent pursuant to the decision of the Supreme Court of Delaware in Vanaman v. Milford Memorial Hospital, Inc, 272 A.2d 718 (Del. 1970) including: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

11. Venue is in the District of Delaware pursuant to 28 U.S.C. § 1391(b) because all defendants are residents of this judicial district and the events or omissions giving rise to the claim occurred in this judicial district.

12. At all times relevant hereto, defendant Larson was an employee, agent, or servant of defendant St. Francis and provided medical and/or surgical care and treatment to Mr. Shitoot while acting within the scope of his employment, agency, or master-servant relationship with defendant St. Francis; accordingly, defendant St. Francis is liable for the negligent acts and omissions of defendant Larson under theories of respondeat superior, master-servant, agency, and right of control.

13. An Affidavit of Merit by an appropriately credentialed expert, together with the expert's curriculum vitae, has been filed with the Court under seal in accordance with 18 *Del. C.* § 6853(a)(1).

14. The injuries and damages to Decedent were caused solely and wholly by reason of the negligence of the Defendants, as set forth more fully herein, and were not caused or contributed thereto by any negligence on the part of Decedent.

## OPERATIVE FACTS

15. On September 15, 2012, Decedent Dinshaw Shitoot arrived in the United States on a business trip from India.

16. Upon information and belief, in early October 2012, Decedent presented to the emergency department of one (or more) hospital(s) with abdominal pain (and possibly vomiting) and had a negative evaluation, including a complete blood count, and was discharged home.

17. On October 8, 2012, Decedent presented to the emergency department of Defendant St. Francis with abdominal pain, weakness, and vomiting.

18. Upon information and belief, Defendant Larson, along with his Physician Assistant Benson, performed a surgical consultation in the emergency department and noted, *inter alia*, that Decedent was tender to palpation in the right lower quadrant of his abdomen and a CT scan of the abdomen/pelvis revealed an abnormal dilated 1.1 cm appendix consistent with "uncomplicated acute appendicitis."

19. On October 8, 2012, Defendant Larson, along with his assistant, Physician Assistant Benson, performed a laparoscopic appendectomy, noting a retrocecal appendix extending superiorly to the liver and confirming the diagnosis of appendicitis, without any complications being noted.

5

20. Upon information and belief, at all times relevant to this matter, Physician Assistant Benson was a healthcare provider as that term is defined in 10 Del.C. §6801.

21. During the laparoscopic appendectomy, which was described as "difficult," there was extensive lysis of peritoneal adhesions due to "significant fibrosis likely from multiple prior episodes of appendicitis and its location in the retrocecal position, which extended along the posterior portion of the ascending colon up to the liver."

22. Postoperatively, Decedent had abdominal pain and significant difficulty voiding, requiring straight catheterization.

23. In the early morning of October 9th, Decedent was noted to have a fever of 100.8 and was still unable to void.

24. At that time, Decedent was anxious and complained of abdominal pain, right shoulder pain, and trouble breathing, as well as being noted to have an abdominal examination with no bowel sounds (ileus), tenderness to palpation, and a tight and moderately distended abdomen, along with a tachycardic heart rate of 120; again straight catheterization was required.

25. On October 9th, Decedent continuing with significant pain and had difficulty ambulating with poor oral intake, as well as spitting up brown mucous or vomit (possibly blood).

26. On October 10th, Decedent continued with difficulty voiding and brown vomitus (possibly blood) and was noted to have tight moderately distended and painful abdomen with a persistent ileus (no flatus); he was only able to walk 20 feet due to excruciating pain.

27. Later that day, a nasogastric tube was placed which drained 200 mL of dark brown liquid.

28. Upon information and belief, around 1:00am on October 11th, Decedent had progressive tachycardia and shortness of breath with a blood pressure of 104/57 and a heart rate of 184 with a respiratory rate of 34.

29. An EKG noted supraventricular tachycardia, but medications and fluids did not improve the vital signs.

30. Decedent developed fever, pancytopenia, and pleural effusions and at approximately 3:00am on October 11th was transferred to the Intensive Care Unit with a diagnosis of sepsis and acute respiratory failure.

31. On October 11, 2012, Decedent was taken back to the operating room for an emergent exploratory laparotomy by Defendant Larson, with the assistance of Physician Assistant Hileman.

32. Upon information and belief, at all times relevant to this matter, Physician Assistant Hileman was a healthcare provider as that term is defined in 10 Del.C. §6801.

33. Findings at laparotomy included diffuse intra-abdominal fecal contamination in all four quadrants and an ascending colon perforation on the posterior surface of 1.5 cm.

34. Defendant Larson performed an abdominal washout with primary repair of the colostomy and a loop ileostomy.

35. Post-operatively on October 11th, Decedent remained in the ICU and was intubated and in septic shock.

36. In the days that followed, Decedent developed Adult Respiratory Distress Syndrome ("ARDS") and renal failure, which required hemodialysis.

37. Decedent was noted to have both extended spectrum beta-lactamase bacteria (E. coli) in his blood, as well as to have K. pneumoniae pneumonia.

38. Decedent remained neurologically depressed and a CT brain revealed a large left MCA infarct.

39. Decedent's severe cerebral injury progressed to loss of brainstem reflexes and brain death, which occurred on October 20, 2012.

40. Subsequently, Decedent's organs were donated.

41. Defendant Larson was Decedent's attending physician throughout Decedent's entire hospitalization at Defendant St. Francis.

42. The Death Certificate lists Decedent's cause of death as hemorrhagic stroke due to septic shock due to ARDS (Adult Respiratory Distress Syndrome) due to colon perforation status post laparoscopic appendectomy of retrocecal appendix.

43. As set forth fully herein, the care and treatment provided by all Defendants to Decedent was negligent and deviated from accepted standards of medical, surgical, and nursing care caused Decedent to suffer:

    a. Death; and/or

    b. Intra-abdominal fecal contamination; and/or

    c. Ascending posterior colon perforation; and/or

    d. Ileostomy; and/or

    e. Sepsis and septic shock; and/or

    f. Adult Respiratory Distress syndrome; and/or

    g. Respiratory failure and intubation and ventilation; and/or

    h. Pneumonia; and/or

    i. Left middle cerebral artery brain infarct; and/or

    j. Stroke; and/or

k.  Brain damage; and/or

l.  Renal failure and hemodialysis; and/or

m.  Multiple central lines and procedures; and/or

n.  Complications and diagnoses and procedures as detailed in the medical records; and/or

o.  Neurological injuries; and/or

p.  Coma; and/or

q.  Brain death; and/or

r.  Loss of earnings and income; and/or

s.  Loss of the expectation of monetary benefits; and/or

t.  Medical expenses; and/or

u.  Conscious pain and suffering; and/or

v.  Loss of contribution and/or support of family beneficiaries; and/or

w.  Loss of familial services (not filial consortium); and/or

x.  Loss of household services; and/or

y.  Funeral and related expenses; and/or

z.  Mental anguish suffered by Chandrakant Shitoot and Manjusha Shitoot, as well as other eligible family beneficiaries; and/or

aa.  The full measure of damages allowed under the laws of the State of Delaware, including, but not limited to, compensatory damages in an amount to be determined, against all Defendants, nominal damages, Punitive damages, Plaintiff's' cost in this action, including reasonable attorney fees pursuant to 42 U.S.C. §1983 and pre and post-judgment interest, and economic damages and

9

non-economic damages, including, but not limited to pain and suffering, expenses, support, services and future lost wages and benefits.

44. The injuries sustained by Decedent were caused solely and wholly by reason of Defendants' negligence and carelessness, as set forth more fully herein, and were not caused or contributed thereto by any negligence on the part of the Decedent.

## COUNT I –NEGLIGENCE

### Plaintiffs v. Defendant Larson

45. The paragraphs and allegations stated above are incorporated herein by reference and made a part hereof as if set forth in full.

46. Defendants Larson's, as well as his employees', agents' and/or servants', care and/or treatment of Decedent, including Physician Assistant Benson, was negligent, careless, and/or deviated from appropriate standards of medical care, surgical care, and/or nursing care in a manner which proximately resulted in injuries described herein, in the following respects:

   a. Improperly performing an appendectomy; and/or

   b. Injuring the colon during an appendectomy; and/or

   c. Perforating the colon during an appendectomy; and/or

   d. Failing to timely and/or properly recognize injury to the colon during an appendectomy; and/or

   e. Failing to timely and/or properly recognize perforation of the colon during an appendectomy; and/or

10

f. Failing to timely and or properly recognize injury to and/or perforation of the colon; and/or

g. Failing to use proper surgical technique during the appendectomy; and/or

h. Failing to convert to an open procedure during the laparoscopic appendectomy; and/or

i. Failing to properly lyse adhesions; and/or

j. Failing to take all necessary precautions to prevent a bowel injury and/or perforation; and/or

k. Failing to select and/or utilize the proper surgical tools/equipment during the appendectomy; and/or

l. Failing to properly visualize the surgical field during the appendectomy; and/or

m. Failing to properly inspect the colon and surgical field during the appendectomy before closing; and/or

n. Failing to timely and/or properly recognize and/or treat an acute abdomen and/or signs and/or symptoms of colon injury/perforation; and/or

o. Failing to properly supervise and/or evaluate the nursing care for Decedent; and/or

p. Failing to timely and properly order and conduct appropriate diagnostic testing; and/or

q. Failing to timely and/or properly diagnose Decedent's bowel perforation; and/or

r. Failing to timely and/or properly treat Decedent's bowel perforation; and/or

s. Failing to timely and/or properly re-explore Decedent's abdomen; and/or

t. Failing to promptly and/or adequately access, evaluate, monitor, and/or treat Decedent's medical and/or surgical condition; and/or

u. Otherwise deviated from appropriate standards of medical, surgical, and/or nursing care.

**WHEREFORE**, Plaintiffs demand all available Wrongful Death Action and Survival Action damages against all defendants jointly and/or severally, in an amount in excess of $75,000.00.

## COUNT II - NEGLIGENCE
### Plaintiffs v. Defendant St. Francis

47. The paragraphs and allegations stated above are incorporated herein by reference and made a part hereof as if set forth in full.

48. Defendant St. Francis is vicariously responsible for the acts and omissions of all individual Defendants and/or agents and/or employees, as detailed herein, including Defendant Larson.

49. Defendant Sr. Francis is vicariously responsible for the acts and omissions of its agents, workmen, servants, and/or employees, as detailed herein, who provided negligent care and treatment to Decedent, as detailed herein, including Defendant Larson and/or Physician Assistant Benson.

50. Defendant St. Francis, as well as its employees', agents' and/or servants' care and/or treatment, including that of Defendant Larson and/or Physician Assistant Benson, of

Decedent was negligent, careless, and/or deviated from appropriate standards of medical care and/or nursing care in a manner which proximately resulted in injuries described herein, in the following respects:

a.  Improperly performing an appendectomy; and/or

b.  Injuring the colon during an appendectomy; and/or

c.  Perforating the colon during an appendectomy; and/or

d.  Failing to timely and/or properly recognize injury to the colon during an appendectomy; and/or

e.  Failing to timely and/or properly recognize perforation of the colon during an appendectomy; and/or

f.  Failing to timely and or properly recognize injury to and/or perforation of the colon; and/or

g.  Failing to use proper surgical technique during the appendectomy; and/or

h.  Failing to convert to an open procedure during the laparoscopic appendectomy; and/or

i.  Failing to recommend conversion to an open procedure during the laparoscopic appendectomy; and/or

j.  Failing to properly lyse adhesions; and/or

k.  Failing to take all necessary precautions to prevent a bowel injury and/or perforation; and/or

l.  Failing to select and/or utilize the proper surgical tools/equipment during the appendectomy; and/or

m. Failing to properly visualize the surgical field during the appendectomy; and/or

13

n. Failing to properly inspect the colon and surgical field during the appendectomy before closing; and/or

o. Failing to timely and/or properly recognize and/or treat an acute abdomen and/or signs and/or symptoms of colon injury/perforation; and/or

p. Failing to properly supervise and/or evaluate the nursing care for Decedent; and/or

q. Failing to provide and document proper nursing care to Decedent; and/or

r. Failing to timely and/or properly notify a physician of changes in Decedent's medical condition; and/or

s. Failing to timely and properly order and conduct appropriate diagnostic testing; and/or

t. Failing to timely and/or properly diagnose Decedent's bowel perforation; and/or

u. Failing to timely and/or properly treat Decedent's bowel perforation; and/or

v. Failing to timely and/or properly re-explore Decedent's abdomen; and/or

w. Failing to promptly and/or adequately access, evaluate, monitor, and/or treat Decedent's medical and/or surgical condition; and/or

x. Otherwise deviated from appropriate standards of medical, surgical, and/or nursing care.

**WHEREFORE**, Plaintiffs demand all available Wrongful Death Action and Survival Action damages against all defendants jointly and/or severally, in an amount in excess of $75,000.00.

## COUNT III - CORPORATE (DIRECT) NEGLIGENCE

### Plaintiffs v. Defendant St. Francis

51. The paragraphs and allegations stated above are incorporated herein by reference and made a part hereof as if set forth in full.

52. In addition to the derivative and vicarious liability of defendant St. Francis, for negligent acts and omissions of its employees, servants, and agents, Defendant St. Francis owed direct and non-delegable duties to Decedent under the tenets set forth in Vanaman v. Milford Memorial Hospital, Inc, 272 A.2d 718 (Del. 1993) and its progeny of case law including: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;(2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

53. The corporate negligence of defendant St. Francis arising out of the nursing care and/or medical care and treatment rendered to Decedent, included the following:

    a. Failed to use reasonable care in the purchase and/or maintenance of safe and adequate facilities and equipment; and/or

    b. Failed to select and retain only competent physicians and/or nurses; and/or

    c. Failed to oversee all persons who practice medicine and/or nursing within its walls as to patient care; and/or

    d. Failed to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients; and/or

e.  Failure to ensure that laparoscopic procedures were timely converted to open surgical procedures when difficulties, complications, and/or visualization problems arose; and/or

f.  Failed to timely and/or properly recognize and/or appreciate the signs and symptoms of an acute abdomen, abdominal emergency, and/or bowel injury/perforation and institute proper timely medical/surgical care; and/or

g.  Failed to properly provide, supervise, and/or evaluate the nursing care.

**WHEREFORE,** Plaintiffs demand all available Wrongful Death Action and Survival Action damages against all defendants jointly and/or severally, in an amount in excess of $75,000.00.

## COUNT IV – SURVIVAL ACTION

### Plaintiffs v. All Defendants

54. The paragraphs and allegations stated above are incorporated herein by reference and made a part hereof as if set forth in full.

55. As a direct and proximal result of the aforementioned negligence of all Defendants in this case, Plaintiffs and Decedent have suffered damages pursuant to the Survival Act, including conscious pain and suffering, physical and/or emotional, as well as other damages pursuant to the Survival Act.

**WHEREFORE,** Plaintiffs demand all available Wrongful Death Action and Survival Action damages against all defendants jointly and/or severally, in an amount in excess of $75,000.00.

## COUNT V – WRONGFUL DEATH ACTION

### Plaintiffs v. All Defendants

56. The paragraphs and allegations stated above are incorporated herein by reference and made a part hereof as if set forth in full.

57. As a direct and proximal result of the aforementioned negligence of all Defendants in this case, Plaintiffs have suffered damages pursuant to the Wrongful Death Act, including loss of pecuniary benefits, loss of contribution and/or support, loss of household services, and/or mental anguish and anxiety due to Decedent's death and Plaintiffs are entitled to compensatory damages, including funeral expenses, pursuant to 10 De.l.C. §3724, as well as other damages pursuant to the Wrongful Death Act.

**WHEREFORE,** Plaintiffs demand all available Wrongful Death Action and Survival Action damages against all defendants jointly and/or severally, in an amount in excess of $75,000.00.

McCANN & WALL, LLC

Dated: October 2, 2014

BY:   /s/  Timothy A. Dillon
   Timothy A. Dillon (#3824)
   300 Delaware Avenue, Suite 805
   Wilmington, DE 19801
   (302) 888-1221
   Attorney for Plaintiffs